IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MARY K. CRAWFORD, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 03-0732-CV-W-HFS |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Before the court is the motion of defendant, W.W. Grainger, Inc. ("Grainger"), for summary judgment. Plaintiff opposes the motion on the ground that defendant, acting through the plan administrator, UNUM Life Insurance Company of America ("UNUM"), abused its discretion.[1] In any event, the parties agree that, as a participant in an employee benefit plan, plaintiff brought this action under the Employee Retirement Income Security Act ("ERISA"), seeking judicial review of UNUM's determination that she was not eligible for continued long term disability benefits beyond an initial 24-month period.

---

[1] The petition initially asserted a breach of contract claim against UNUM. However, after removal to this court, plaintiff amended her petition changing the defendant to her former employer, W.W. Grainger, Inc.(docs. 7 and 8).

Background Facts

The following facts, with the exception of medical evidence, are undisputed; however, where controverted, it will be duly noted.[2] Plaintiff began working for defendant in 1985; she began her employment as a warehouse person, then a picker/packer, and finally as a quality inspector. In 1989, plaintiff was diagnosed with Type II non-insulin diabetes, and on or about September of 1989, plaintiff was diagnosed with bilateral plantar fascitis. Plaintiff was treated for this latter condition by Dr. Leslie D. Thomas, who ultimately concluded that prolonged standing on a hard concrete surface contributed to plaintiff's discomfort, and that plaintiff should be retrained to work in a position that is not "standing intensive."

In a note dated April 26, 1995, Dr. Thomas stated that the only way for plaintiff to alleviate the pain in her feet would be to stop standing for hours at a time on hard, concrete surfaces. (AR: pg. 373). Dr. Thomas also opined that plaintiff may ultimately need to consider job retraining. (Id). On July 14, 1995, plaintiff left her employment, and received short-term disability benefits. (AR: pg. 428).

In a note dated September 12, 1995, Dr. Thomas noted that although plaintiff's condition had diminished somewhat, due to the chronic nature of her discomfort, she may need to consider abstaining from work on a long term basis. (AR: pg. 373). Nevertheless, on December 22, 1995, in response to a questionnaire from UNUM, Dr. Thomas stated that plaintiff could return to gainful employment if she could sit for prolonged periods of time. (AR: pg. 393). Dr. Thomas further opined that during an 8 hour work day, plaintiff could sit for 8 hours, stand for 2 hours with rest, and walk

---

[2]For the most part, the facts are taken from the uncontroverted facts as stated in the parties' brief, as well as the Administrative Record ("AR").

for 2 hours with rest. (AR: pg. 394). On January 26, 1996, plaintiff advised a UNUM claims representative that she felt capable of performing sedentary work. (AR: pg. 371). By letter dated January 30, 1996, UNUM approved plaintiff for long-term disability benefits; the effective date was calculated to be January 12, 1996. (AR: pg. 360). Plaintiff was also advised that, after 24 months, she would be required to show that she was unable to perform any job ("the any occupation standard"); if not, it was likely that her benefits would terminate effective January 12, 1998.

During a Rehab Feasibility Review dated April 25, 1996, UNUM noted that plaintiff would be able to perform unskilled/semiskilled jobs such as industrial order clerk, production clerk, reservation clerk, charge account clerk, or mortgage loan clerk. (AR: pg. 38). It was also noted that short-term computer training would enhance her employability, and that she would be able to pursue employment at Grainger upon obtaining basic computer skills. (Id).

On June 27, 1996, UNUM received information regarding jobs available in plaintiff's area for Customer Service Representative, Payroll Clerk, and Credit Clerk; this information was sent to plaintiff on or about June 28, 1996. (AR: pg. 290, 299). Also, on June 28, 1996, Dr. Thomas noted plaintiff's complaint of pain in the proximal third of the radial side of her forearm (AR: pg. 5); and on July 1, 1996, Dr. Thomas noted that although plaintiff complained of pain in her knees, x-rays showed very minimal degenerative changes. (AR: pg. 228).

By letter dated August 2, 1996, UNUM advised plaintiff that due to her failure to respond to its offer of rehabilitative assistance, the program would be discontinued. (AR: pg. 284).

On September 17, 1996, Administrative Law Judge ("ALJ") William E. Zleit found that the medical evidence confirmed that plaintiff had significant medical problems including bilateral plantar fasciitis, irritable bowel syndrome, difficult to control diabetes, and elevated cholesterol and

3

triglyceride levels. (Plaintiff's Ex. D: pg. 4). The ALJ found that these impairments either singly or in combination failed to meet or equal a listed impairment in the Listing of Impairments. (Id). Nevertheless, the ALJ concluded that due to evidence showing plaintiff's receipt of long term disability payments, as well as the vocational expert's opinion that plaintiff could not be gainfully employed because of her need to lie down and elevate her feet, plaintiff's application for disability insurance benefits would be granted. (Id: pg. 5).

In October of 1996, plaintiff was diagnosed with carpal tunnel syndrome, and Dr. Thomas recommended outpatient surgery (AR: pg. 90, 173); plaintiff did not visit Dr. Thomas for at least one year after this diagnosis. (AR: pg. 10).

By letter dated November 12, 1996, UNUM advised plaintiff that due to her recent social security award a recent recalculation indicated an overpayment which would have to be paid back to UNUM. (Plaintiff's Ex. G).

Dr. Coleman treated plaintiff for irritable bowel syndrome, and in response to questions from UNUM, opined that plaintiff was able to perform full-time sedentary work. (AR: pg. 472). By letter dated November 7, 1997, Dr. Carl E. Ledbetter noted that he sees plaintiff 2 to 3 times a year, and agrees that she is capable of sedentary work. (AR: pg. 461). He also noted that plaintiff could not tolerate prolonged sitting or standing, and although diagnosed with left carpal tunnel syndrome, plaintiff refused to have surgery performed. (AR: pg. 462).

On November 25, 1997, rehabilitative consultants, Triebold & Asscs., performed a Transferable Skills Assessment and after reviewing plaintiff's recent medical history, as well as her education and work history, found that due to the restriction of sedentary work, plaintiff could not perform her past relevant work as a Quality Assurance Inspector. (AR: pg. 449). However, Triebold

noted that there were available occupations in which plaintiff's transferable skills could be utilized which would involve little exertion of up to occasional simple grasping, handling and holding of objects such as file folders, papers and pens. (AR: pg. 449). These occupations would include general clerical functions and customer service tasks. (Id). In a letter dated January 14, 1998, Dr. Ledbetter agreed with the Triebold assessment. (AR: pg. 440).

On January 16, 1998, UNUM advised plaintiff of its denial of her claim for long-term disability benefits under the any occupation standard. (AR: pg. 105-06). On March 21, 1998, plaintiff appealed the termination of benefits. (AR: pg. 72-75).

Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Lawyer v. Hartford Life and Acc. Ins. Co., 100 F.Supp.2d 1001, 1007 (W.D.Mo. 2000); citing, Celotex Corp. V. Catrett, 477 U.S. 317, 327 (1986). All facts and inferences must be viewed in a light most favorable to the nonmoving party. Lawyer, at 1007; citing, Matsushita Elc. Indus. Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). The party moving for summary judgment must establish both the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law. Lawyer, at 1007; citing, Matsushita Elec. Indus. Co., 475 U.S. at 586-90.

Once the moving party has met its burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Lawyer, at 1008.

5

To determine whether disputed facts are material, courts analyze the evidence in the context of the legal issues involved. Id. The mere existence of factual disputes between the parties is insufficient to avoid summary judgment. Id. To establish that a factual dispute is genuine and sufficient to warrant trial, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Lawyer, at 1008; Matsushita, at 586.

ERISA Standard

Under ERISA, a plan beneficiary has the right to judicial review of a benefits determination. 29 U.S.C. § 1132(a)(1)(B). The standard under which a plan administrator's or fiduciary's decision to grant or deny benefits is reviewed depends upon whether "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Jackson v. Metropolitan Life Ins. Co., 303 F.3d 884 (8th Cir. 2002); quoting, Firestone Tire & Rubber Co. V. Bruch, 489 U.S. 101, 115 (1989). Where the benefits plan explicitly grants discretionary authority to a fiduciary, the fiduciary's eligibility determination is reviewed for an abuse of discretion. Jackson, at 887.

A conflict of interest may trigger a less deferential standard of review. Tillery v. Hoffman Enclosures., Inc., 280 F.3d 1192, 1197 (8th Cir. 2002). The degree of deference will decrease on a sliding scale in proportion to the extent of the conflict, recognizing the arbitrary and capricious standard is inherently flexible. Tillery, at 1197. However, not every funding conflict of interest warrants heightened review, because ERISA itself contemplates the use of fiduciaries who might not be entirely neutral. Id. The less deferential standard of review applies when the plaintiff presents "material, probative evidence demonstrating (1) a palpable conflict of interest or a serious

6

procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty." Id.; quoting, Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998). In Woo, the plaintiff presented evidence that when Hartford Life Insurance Company, as the plan administrator, denied benefits, it received a direct financial benefit as the plan insurer, if the disability extended beyond two years. Woo, 144 F.3d at 1161. Consequently, the court agreed that a less deferential standard of review was appropriate. Id. However, the court also cautioned that not every funding conflict of interest per se warranted heightened review. Id. at n.2.[3]

Here, although plaintiff contends that less deference is appropriate due to "an inherent conflict of interest," plaintiff fails to describe or, in any way, articulate the alleged conflict. Moreover, defendant argues that the Plan is funded by defendant, and unlike the circumstances in Woo, UNUM simply administered the claims process, it did not insure the benefits. (Defendant's Reply Brief: pg. 2; Ex. B: Affidavit of Nancy Thurber, ¶ 4). Under the facts at bar, plaintiff fails to present material probative evidence demonstrating that a palpable conflict of interest or a serious procedural irregularity existed which caused a serious breach of UNUM's duty to her. Lawyer v. Hartford Life and Acc. Ins. Co., 100 F.Supp.2d at 1009. Thus, the denial of benefits will be reviewed for an abuse of discretion.[4]

---

[3]In addition to a conflict of interest, the court in Woo ultimately found insufficient evidence in the record to support the plan administrator's decision because of a failure to use proper judgment or to thoroughly investigate Woo's claim. Woo v. Deluxe Corp., 144 F.3d at 1161-62.

[4]The abuse of discretion standard is appropriate when the plan gives the administrator "discretionary authority to determine the eligibility benefits or to construe terms of the plan." Ferrari v. Teachers Ins. And Annuity Ass'n, 278 F.3d 801, 806 (8th Cir. 2002).

7

Under the abuse of discretion standard, "the proper inquiry is whether the plan administrator's decision was reasonable; i.e., supported by substantial evidence." Jackson, at 887; quoting, Donaho v. FMC Corp., 74 F.3d 894, 899 (8th Cir. 1996). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Jackson, at 887.[5]

Plaintiff initially appears to complain that, under the Plan, she was required to apply for social security benefits, and upon successfully obtaining an award of benefits, she was required to reimburse defendant a portion of the payments received from the Plan. It is unclear whether this is simply a recitation of the facts for plaintiff fails to present a legal argument, and cites no case law that would prohibit this requirement.

Plaintiff next complains that in rendering its decision UNUM failed to give deference to the finding of the ALJ who determined that she was unable to perform any work. Plaintiff also complains that in his assessment consultant Triebold chose to ignore the social security report as well as the testimony of the vocational rehabilitation expert. Plaintiff's argument is unpersuasive for an ERISA plan administrator or fiduciary generally is not bound by a Social Security Administration determination that a plan participant is "disabled." Jackson, at 889; see also, Coker v. Metropolitan Life Ins. Co., 281 F.3d 793, 798 (8th Cir. 2002) (the determination that plaintiff suffers from a pain-based disability under Social Security regulations does not require the plan administrator to reach the same conclusion).

---

[5]The requirement that the fiduciary's decision be reasonable should be read to mean that a "decision is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." Jackson, at 887; quoting, Donaho, 74 F.3d at 889.

8

Plaintiff also claims that the Triebold assessment is further flawed because it accepted the opinions of non-treating physicians Drs. Ledbetter and Coleman, as opposed to that of plaintiff's treating physician, Dr. Thomas. Contrary to plaintiff's contentions, Dr. Thomas's opinion, similar to that of Drs. Ledbetter and Coleman, concluded that plaintiff was capable of performing certain work. In fact, Dr. Thomas expressly noted that plaintiff would be able to return to gainful employment at a job that would allow her to sit for prolonged periods of time. (AR: pg. 393).[6]

Finally, plaintiff claims that it was an abuse of discretion for defendant, acting through UNUM, to deny her request for long-term disability benefits in view of the vocational review authored by Dr. Robert Violetta. (Plaintiff's Ex.: L). Again, contrary to plaintiff's contention, Dr. Violetta did not state that plaintiff was precluded from gainful employment. Rather, given her condition limiting her ability to perform frequent repetitive handling activities and the restriction against prolonged standing or walking, Dr. Violetta concluded that plaintiff would be able to perform as an information clerk and gate/access control attendant. (Id). As previously noted, plaintiff's argument that more consideration should have been given to the opinion expressed in the social security case of a need to elevate her feet to a horizontal position is without merit. Dr. Violetta noted that the recommended jobs permitted inclined foot rests underneath the desk or work station.

---

[6]While this may have differed somewhat from that part of Dr. Lebetter's opinion that plaintiff should not sit for prolonged periods of time, it does not necessarily demonstrate an abuse of discretion. For where there is a conflict of opinion between a claimant's treating physicians and the plan administrator's reviewing physicians, the plan administrator has discretion to find that the employee is not disabled unless "the administrative decision lacks support in the record, or ... the evidence in support of the decision does not ring true and is ... overwhelmed by contrary evidence." Coker v. Metropolitan Life Ins. Co., 281 F.3d at 799; quoting, Donaho v. FMC Corp, 74 F.3d at 901.

9

Under the circumstances presented, UNUM's decision was supported by substantial evidence and was reasonable given the evidence it had before it. Thus, defendant, acting through UNUM, did not abuse its discretion in deciding not to continue plaintiff's benefits.

Accordingly, it is hereby

ORDERED that defendant's motion for summary judgment (ECF doc. 17) is GRANTED. The clerk is directed to enter judgment in favor of defendant.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

May 17, 2005

Kansas City, Missouri